ROBERTS, APPELLANT, *v.* BOHN, APPELLEE.

(No. 5007—Decided April 6, 1971.)

*Messrs. Pfau, Comstock & Springer,* for appellant.
*Messrs. Harrington, Huxley & Smith,* for appellee.

LYNCH, J. This is an action for personal injuries sustained by a female passenger in a motor vehicle which was involved in an accident with another motor vehicle at the intersection of Belmont Avenue and Gypsy Lane in which the jury rendered a unanimous verdict for the defendant. Plaintiff is appealing on several questions of law.

Plaintiff's first assignment of error concerns the questioning of plaintiff by defendant's attorney on cross-examination as to whether her employer, Mahoning Valley Agency, continued to pay her during the time she was off work because of her injuries sustained in the accident. The objection of plaintiff's counsel to this question was overruled by the trial court, and plaintiff admitted that her employer continued to pay her salary while she was off work. Defendant's counsel pointed out in his closing argument that there was no economic loss to the plaintiff in the matter of wages because her employer continued to pay her while she was off work. This was clearly error. *Pryor* v. *Webber,* 23 Ohio St. 2d 104. The trial judge did not correct this error in his charge to the jury, and proba-

bly aggravated it by giving the following special charge requested by defendant.

"The Court charges you that should you award damages to the plaintiff, she is not entitled to be enriched thereby and that such damages, if awarded, shall be only those which will fairly compensate her and put her in the same position in which she would have been had the accident not occurred."

Defendant contends that the instant case can be distinguished from the *Pryor* case, because in the *Pryor* case the trial court instructed the jury that the defendant was negligent as a matter of law and the issues submitted to the jury were the questions whether the collision was the proximate cause of plaintiff's injuries and what was the nature and extent of plaintiff's injuries, whereas in the instant case, all of the issues, including defendant's negligence, were submit⁺ ,d to the jury and there was a general verdict for the defendant. Defendant contends that the two issue rule is applicable to this case because the issue of defendant's negligence was presente. to the jury free of this error, inasmuch as defendant did not see how the accident occurred and, therefore, did not testify as to anything that would be pertinent to defendant's negligence. *Centrello* v. *Basky,* 164 Ohio St. 41. Defendant cites the following from *Sherer* v. *Smith*, 155 Ohio St. 567, at page 571:

"The rule is well established that where it is plainly evident from the verdict of a jury that it found no negligence or no cause of action, any error in admitting or rejecting evidence respecting the subject of damages is harmless unless it palpably prejudiced the jury on the main issue."

We feel that plaintiff's credibility was attacked as to the amount of damages to which she would be entitled by her admission under cross-examination of receiving wages during her disability caused by the accident; however, defendant's contention, in effect, is that this attack on plaintiff's credibility would not affect the credibility of the testimony on the issue of defendant's negligence. Plaintiff argues that this tactic of defense counsel attacked the credibility of plaintiff's entire claim.

Defendant presented testimony that would support a jury's conclusion that the accident was proximately caused as a result of the sole negligence of plaintiff's driver rather than any negligence on the part of defendant. In the *Pryor* case, the Ohio Supreme Court held that the tactic of defense counsel at issue in the assignment of error constituted prejudicial error that could only be corrected by the granting of a new trial. The court, in its opinion, cited Annot., 77 A. L. R. 2d 1156, with respect to disclosure of workmen's compensation benefits. It reads as follows:

"Generally, it has been held to constitute error, requiring a reversal or new trial, to bring to the jury's attention the fact that the plaintiff in a personal injury or death action is entitled to workmen's compensation benefits. The courts have reasoned that such information would tend to prejudice the jury and influence their verdict, either as to *liability or damages,* as such information is ordinarily immaterial and irrelevant." (Emphasis added.)

We had a similar question raised in this assignment of error before us in the unreported case of *Suchy* v. *Moore,* Belmont County Court of Appeals case No. 1087, and we held that *Pryor* v. *Webber, supra,* required us to reverse the case and to order a new trial. We have certified the *Suchy* case to the Ohio Supreme Court as being in conflict with *Levy* v. *Coon,* 11 Ohio App. 2d 200. Eventually, the Ohio Supreme Court will decide this issue. In the meantime, this court will follow its decision in the *Suchy* case.

Part of plaintiff's fifth assignment of error concerns the trial court's act of giving the following special charge to the jury at the request of defendant.

"Ladies and gentlemen of the jury, the court charges you that tire skid marks made by a motor vehicle involved in an accident are not probative evidence of the speed of such vehicle, in the absence of expert testimony as to the use of skid marks in determining speed."

This charge is identical to the language of the first paragraph of the syllabus of *Gutter* v. *Frazer,* 120 Ohio App. 305, and the meaning of the third paragraph of the syllabus of *Shelly* v. *Motter,* 112 Ohio App. 201. However, these cases are in conflict with *Bailey* v. *Parker,* 34 Ohio App. 207, which held that tire marks of an automobile

after application of brakes can be considered by the jury on the question of a driver's negligence in driving at an excessive rate of speed. We prefer the holding in *Bailey* v. *Parker* because it conforms with the generally accepted law throughout the United States.

In 8 American Jurisprudence 2d 504-505, Automobiles and Highway Traffic, Section 958, there appears the following.

"The general rule is that testimony as to tire or skid marks on the highway is admissible in civil actions for injury or damage resulting from a motor vehicle accident where a sufficient foundation therefor is laid, as by showing, for example, that the condition of the highway was the same at the time of observation as it was at the time of the accident and that the marks had not been changed by the weather or traffic, and where there is sufficient identification of the marks as having been made by the motor vehicle involved in the accident. Such testimony constitutes pertinent and admissible evidence as bearing on the speed at which the motor vehicle was being operated at the time of the accident * * *."

See Annotation, 23 A. L. R. 2d 112 at 116 and 125.

In 61 Corpus Juris Secundum 589-590, Motor Vehicles, Section 518 (9), there appears the following.

"The mere skidding of a motor vehicle is not in itself conclusive evidence of negligence. However, skidding may be considered with other circumstances in determining the question of negligence, and it may constitute evidence of excessive speed or lack of control."

We hold that the mere skidding of a motor vehicle is not in itself conclusive evidence of negligence. However, skidding may be considered by the jury along with other circumstances, including the length of the skid marks, in determining the question of the speed of the motor vehicle.

Therefore, we find that the trial court committed error in giving the special charge to the jury at issue in this assignment of error.

Plaintiff's third assignment of error concerns the questioning of plaintiff on cross-examination as to whether she was wearing an available seat belt and her admission

that she was not wearing a seat belt. Plaintiff's counsel objected to such testimony as irrelevant, but the trial court ruled that such testimony could remain.

This raises an issue that has come before this court in some form or another in two other cases. Only one reported Ohio case has come to our attention on the subject of wearing seat belts, and it is not directly in point. However, this issue has arisen in several cases in other states.

The pertinent facts on the use or nonuse of seat belts as a safety precaution for the prevention of injuries or death resulting from a motor vehicle accident have received widespread publicity. As a result, a substantial number of persons occupying automobiles are convinced as to the value and need of seat belts and use them when available. Ohio has enacted R. C. 4513.262 which requires all motor vehicles manufactured after January 1, 1962, to be equipped with seat belts.

*Bertsch* v. *Spears,* 20 Ohio App. 2d 137, held that R. C. 4513.262 does not require the wearing of seat belts, and that the failure to wear seat belts is not negligence per se.

There is some authority in other states that there is a duty, based on the common law standard of ordinary care, to use available seat belts independent of any statutory mandate, and that when there is evidence in a case indicating a causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard. *Bentzler* v. *Braun,* 34 Wis. 2d 362, 149 N. W. 2d 626; *Sams* v. *Sams,* 247 S. C. 467, 148 S. E. 2d 154, 15 A. L. R. 3d 1423.

Other cases hold that the failure of a passenger of an automobile to wear an available seat belt is not related to the cause of the accident and consequently should not be considered as contributory negligence, although such failure may be a causative factor in determining the extent of damages for which the plaintiff should be allowed recovery. *Noth* v. *Scheurer* (E. D. N. Y.), 285 F. Supp. 81. See *Mount* v. *McClellan,* 91 Ill. App. 2d 1, 234 N. E. 2d 329.

However, we prefer the authority of the majority of the cases in other states which is that the determination as to whether an occupant of an automobile should or should not be required to wear a seat belt should be left to

the Legislature. In the absence of a statute to the contrary, there is no common law duty imposed upon an occupant of an automobile to wear a seat belt in ordinary vehicular travel, and the failure to use an available seat belt is not contributory negligence as a matter of law. Therefore, evidence on the failure of an occupant of an automobile to use an available seat belt is generally not admissible in an action for personal injuries arising out of an automobile accident.

Robinson v. Lewis, 254 Or. 52, 457 P. 2d 483; Miller v. Miller, 273 N. C. 228, 160 S. E. 2d 65; Romankewiz v. Black, 16 Mich. App. 119, 167 N. W. 2d 606; Lawrence v. Westchester Fire Ins. Co., 252 La. 969, 213 So. 2d 784; Woods v. Smith (N. D. Fla.), 296 F. Supp. 1128; Robinson v. Bone (D. Or.), 285 F. Supp. 423; Dillon v. Humphreys, 56 Misc. 2d 211, 288 N. Y. S. 2d 14; Lipscomb v. Diamiani (Del.), 226 A. 2d 914; Kavanagh v. Butorac, 140 Ind. App. 139, 221 N. E. 2d 824; Brown v. Kendrick (Fla.), 192 So. 2d 49.

The issue on this question is ably summarized by the Oregon Supreme Court in Robinson v. Lewis, 254 Or. 52, 457 P. 2d 483, at pages 55 and 56 as follows.

"There is considerable evidence that seat belts are effective safety devices and serve to save many lives and minimize many injuries. See the studies referred to in Bentzler v. Braun, supra [34 Wis. 2d 362, 149 N. W. 2d 626, 639 (1967)]; 16 A ı. Jur. Proof of Facts 351, Seat Belt Accidents, Section 5, p. 359; Roethe, Seat Belt Negligence in Automobile Accidents, 1967 Wis. L. Rev. 288-292. It is apparent, however, that in spite of an intensive campaign to promote their use, seat belts are not being used by the general public. The 1968 edition of Accident Facts published by the National Safety Council states as follows:

" 'Safety belts are now available to about two-thirds of all passenger car occupants, but the belts are being used only about 40 per cent of the time, on the average. As a consequence, the net usage figure—the per cent of all exposure hours during which passenger car occupants are using belts—is estimated to be only about 25 per cent.'

"Although the statistical studies may indicate otherwise the belief seems to persist that seat belts may increase the hazard in case of accidents resulting in submer-

sion or fire and in some accidents may cause or increase injuries in the abdominal area.''

If the failure to wear available seat belts can be considered as negligence and defendant established by competent evidence that a certain percentage of plaintiff's injuries, no matter how slight, were the direct and proximate result of the failure to use an available seat belt, then under our doctrine of contributory negligence, the plaintiff would be precluded from any recovery.

The cases concerning seat belts generally arise out of fact situations such as in the instant case where a defendant is attempting to escape the legal consequences of negligence on his part by imputing negligence to the plaintiff because of the failure to wear seat belts. Usually, there is no connection between the failure to wear seat belts and the cause of an accident, but the defendant contends that the failure of plaintiff to wear seat belts is relevant to the question of the proximate cause of the injuries to plaintiff resulting from the accident.

The argument for applying the doctrine of contributory negligence to a failure to wear available seat belts is that it is common knowledge that in automobile accidents personal injuries or death may result; therefore, persons occupying automobiles have a duty to wear available seat belts for their own safety.

We have already pointed out the controversy as to whether the wearing of seat belts contributes or interferes with the safety of persons using them and the lack of acceptance of the use of seat belts by a substantial percentage of the public. We feel that this is sufficient in itself to justify the position of the majority on this issue. However, even if there was general acceptance of the value of and need for using seat belts while occupying a motor vehicle, we feel that there is a serious question as to any legal duty to wear seat belts in the absence of a statute to the contrary.

An automobile is not an inherently dangerous instrumentality. *Williamson* v. *Eclipse Motor Lines, Inc.,* 145 Ohio St. 467. It only becomes dangerous because of its negligent operation or because it is allowed to be out of repair. *Feiss* v. *Hensch,* 28 Ohio App. 42.

We feel that if everybody properly took care of their automobiles and properly drove them, automobiles could be used without any substantial risk of injury to persons. Results of research on the cause of automobile accidents indicate that the great percentage of automobile accidents are caused by defective drivers rather than by defective automobiles. Thus, the great percentage of automobile accidents occur because of the negligence of some person who failed either to drive carefully or to keep his automobile in good operating condition.

One may rightfully assume the observance of the law and the exercise of ordinary care by others, and action in accordance with such assumption, in the absence of notice or knowledge to the contrary, is not negligence. *Swoboda* v. *Brown,* 129 Ohio St. 512; 6A Ohio Jurisprudence 2d 175, Automobiles, Section 229.

We conclude that in the absence of any statute to the contrary, there is no duty on the part of an occupant of an automobile to anticipate another's negligence and to protect his own safety by such precautions as wearing available seat belts.

We hold that the questioning of plaintiff on cross-examination as to her failure to wear seat belts was irrelevant, and that the trial court committed error in permitting such testimony to remain in the case. However, the failure of plaintiff to wear a seat belt was not mentioned by defendant's counsel in closing argument, and the trial court did not charge the jury on contributory negligence. Under the circumstances of this case, we do not feel that this error, by itself, was sufficiently prejudicial to warrant a new trial. However, the members of this court look with disfavor on the use of this defense tactic.

Plaintiff's second assignment of error concerns the questioning on direct examination by defense counsel of the police officer who investigated the accident about the statement that defendant gave him as to what occurred. Over objection by plaintiff's counsel, the trial court permitted the police officer to read defendant's statement.

It is a general rule that self-serving declarations, that is, statements favorable to the interest of the declarant, when not made in the presence of the adverse party or his

agent, are not admissible in evidence as proof of the facts asserted. 21 Ohio Jurisprudence 2d 324, Evidence, Section 313; 29 American Jurisprudence 2d 674, Evidence, Section 621.

Plaintiff was not present when defendant made his statement to the police officer. Therefore, this was error. However, we do not think that the statement of defendant to the police officer was prejudicial to plaintiff's case.

We have reviewed the other assignments of error and find them without merit.

We conclude that plaintiff was prejudiced by the errors committed in this case which we have discussed under her first and fifth assignments of error.

The judgment is reversed and the cause is remanded for a new trial in accordance with this opinion.

*Judgment reversed.*

O'NEILL, P. J., and JOHNSON, J., concur.